**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| REBECCA O'KEEFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.4:08CV839MLM |
| ) | |
| CHARTER COMMUNICATIONS, LLC,) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Charter Communications, LLC ("Defendant"). Doc. 37. Plaintiff Rebecca O'Keefe has filed a Response. Doc. 46. Defendant has filed a Reply. Doc. 50. Also pending are Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Motion for Leave to File Second Amended Complaint, and Defendant's Motion for Leave to File Motion for Summary Judgment. Docs. 48, 51, 52. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Doc. 8.

**Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to File Second Amended Complaint**

Defendant filed the pending Motion for Summary Judgment on February 24, 2011. Plaintiff sought to dismiss her Amended Complaint without prejudice on the date that her Response to the Motion for Summary Judgment was due. Doc. 39. Upon granting Plaintiff's Corrected Motion for Dismissal Without Prejudice, the court ordered that, in the event Plaintiff refiled this matter, the Case Management Order would be reinstated and that Plaintiff's Response to Defendant's Motion for Summary Judgment would be due within seven days from the date the Amended Complaint was

refiled. Docs. 40, 42. Plaintiff refiled the Amended Complaint on May 19, 2011. Doc. 44.

29 U.S.C. § 2617(c)(1) provides that actions for violations of the FMLA must be brought within two years of the last event constituting the alleged violation for which such action is brought. A three year statute of limitations is applicable to willful violations. 29 U.S.C. § 2617(c)(2). Upon seeking dismissal without prejudice, Plaintiff stated that the three year statute expired on May 19, 2011. Doc. 39. Plaintiff's Amended Complaint, however, does not allege willful violations of the FMLA.

Defendant filed the pending Motion to Dismiss Plaintiff's Amended Complaint on June 1, 2011, on the ground that the applicable two year statute of limitations had run. Doc. 48. On the same date, but after, Defendant filed the Motion to Dismiss, Plaintiff filed a Motion for Leave to File Second Amended Complaint. Doc. 51. The proposed Second Amended Complaint alleges willful violations of the FMLA. In support of her Motion for Leave, Plaintiff argues that Defendant will not be prejudiced; that, pursuant to Rule 15(a)(2), leave to "amend shall be freely given when justice so requires"; that it is implicit in Plaintiff's claim that Defendant terminated her while she was on FMLA leave that the termination was willful; that it was implicit in Plaintiff's Motion to Dismiss without prejudice that Plaintiff contemplated alleging that her termination was willful; and that, therefore, Defendant could not be surprised that she would allege willfulness nor would Defendant be prejudiced if the court were to grant Plaintiff's leave to file a Second Amended Complaint alleging willfulness. Defendant has opposed Plaintiff's Motion for Leave to File. Doc. 54.

The court finds that the arguments Defendant makes in opposition to Plaintiff's Motion for leave are well taken. "Permission to amend may be withheld if, among other things, the amendment would prejudice the opposing party or create undue delay." Deutsche Fin. Servs. Corp. v. BCS Ins.

Co., 299 F.3d 692, 700 (8th Cir. 2002). First, the court notes that this matter is set for trial on Monday, July 18, 2011. To allow Plaintiff to allege willfulness at this stage in the proceedings would arguably require additional discovery and substantially delay the proceedings. See id. Second, the Case Management Order required that amendments to the pleadings be made by September 3, 2010. Doc. 28. Thus, Plaintiff seeks to amend over eight months after the deadline for amending has passed. See id. Third, at the time Plaintiff sought to voluntarily dismiss this matter in March 24, 2011, Plaintiff was aware that a three year statute of limitations was applicable only to willful violations of the FMLA, as she so noted in her Amended Motion for Dismissal Without Prejudice. Nonetheless, when Plaintiff refiled on May 19, 2011, she did not allege willfulness. Fourth, at the time Plaintiff sought to dismiss, a motion for summary judgment was pending and Plaintiff's response was due. See id. (noting that dispositive motions had been filed at the time the plaintiff sought to amend). Fifth, there is absolutely no basis for Plaintiff's suggestion that Defendant was put on notice, at the time Plaintiff sought to dismiss, that Plaintiff would allege willfulness in the event she refiled. Sixth, there is absolutely no basis to suggest that it was implicit in the court's granting Plaintiff's Motion for Dismissal Without Prejudice that if Plaintiff refiled the court would permit Plaintiff to allege willfulness. Seventh, to permit Plaintiff to amend to allege willfulness would be futile, as the court has found, as discussed below, that summary judgment should be granted in Defendant's favor based on the Amended Complaint which does not allege willfulness. See Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 878 (8th Cir. 2006) (holding that leave to amend "may be denied if an amendment would be futile"); Wiles v. Capital Indem. Corp., 280 F.3d 868, 871(8th Cir. 2002) ("Leave to amend should be denied if the proposed amended pleading would be futile.").

For the aforementioned reasons the court finds that Defendant would be substantially prejudiced and that there would be undue delay if the court were to grant Plaintiff leave to file a Second Amended Complaint alleging wilfulness. See Stricker, 436 F.3d at 878; Deutsche Fin., 299 F.3d at 700. As such, the court finds that justice does not require that the court grant Plaintiff leave to file a Second Amended Complaint. See Stricker, 436 F.3d at 878; Deutsche Financial, 299 F.3d at 700.

Because Plaintiff's Amended Complaint does not allege wilfulness the court finds that the two-year statute of limitations has expired[1] and that, therefore, Plaintiff's refiled Amended Complaint is untimely. As such, the court finds that Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be granted.

## STANDARD FOR SUMMARY JUDGMENT

Alternatively, the court will address Defendant's Motion for Summary Judgment filed on February 24, 2010. Doc. 37. The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if

---

[1] The court need not address the applicable dates for determining whether the two-year statute ran, as Plaintiff has admitted that the three-year statute expired on May 19, 2010.

the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendant's Motion for Summary Judgment.

## UNDISPUTED FACTS[2]

On about March 18, 2996, Plaintiff first became employed by Defendant as a repair service representative. Plaintiff was ultimately promoted to purchasing supervisor, which position was

---

[2] The facts are undisputed unless otherwise stated. Additionally, in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff makes numerous derogatory comments regarding Defendant's conduct during the course of this lawsuit. The court notes that the record reflects that Plaintiff's accusations are unfounded. See Doc. 46 at 1-2, n.1.

5

eliminated in January 2003. Plaintiff received a severance package. Plaintiff applied for and was offered an accounts payable lead position on about March 15, 2005. In 2006, Plaintiff requested and received leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, from November 2006 until January 17, 2007, for her own medical condition. Plaintiff remained in her accounts payable lead position until March 2007, when she became a sales assistant.

On about October 17, 2007, Plaintiff received and acknowledged, in writing, her receipt of Defendant's employee handbook, including Defendant's policies and requirements with respect to FMLA leave. The handbook provides, in relevant part, as follows:

> Leaves of Absence
> Charter understands that there are circumstances that may require you to take a leave of absence. Charter provides several types of leaves of absence, such as Family and Medical Leave (FMLS), ... The treatment of pay, benefits, and employment continuation can vary for each type of leave of absence, and your local Human Resources department can provide information on these topics.
>
> Absence due to a personal illness or injury lasting five or more consecutive workdays requires you to complete the Request for Leave of Absence form, *as well as your doctor's completion of the Certification of Health Care Provider form.* See your local Human Resources department for appropriate procedures and forms for a leave of absence request. Forms may also be accessed on www.myCharterConnection.com. Leaves of absence are subject to approval. Therefore, you must submit all required or required documentation substantiating your need for leave and receive company approval in order to be entitled to take leave. You must also check in with your supervisor at least once per week during any leave and must promptly respond to any calls or written correspondence from the company during your leave. *If you fail to comply with any of these guidelines, then your absence will be considered unauthorized and you may be subject to corrective action, up to and including termination.* You should advise your supervisor of the date that you expect to return to work. ... .
>
> Family and Medical Leave of Absence (FMLA)
> Charter provides leave to eligible employees in accordance with the Family and Medical Leave Act (FMLA). In addition, employees in certain states may be eligible for additional leave in accordance with state law. Other qualifying leaves such as workers' compensation run concurrent with FMLA.

6

> Non-Discrimination, Non-Retaliation Provision
> Exercise of your rights under the FMLA will not negatively affect your employment or the terms and conditions of that employment. ... Charter will not interfere with, restrain, or deny the exercise of any right provided by the FMLA.
>
> ...
>
> Notice and Certification Requirements
> ... . If you are taking leave for your own ... serious health condition, you must furnish a Certification of Health Care Provider form ... , which may be obtained from your local Human Resources department. ... *The certification must be provided within 15 days of the request for leave, unless it is not practical to do so under the circumstances, in which case you must provide this certification as soon as it is practical.* It is your responsibility to make sure that the health care provider completes this certification and that it is submitted to the company within the allowable time frame in order for your leave to be approved.

Doc. 38-6 at 2-8 (emphasis added).

Michelle Luecal, Defendant's Senior Human Resources Director, states, in an affidavit, that Defendant routinely sends a packet of information and forms to employees requesting leaves of absence pursuant to Defendant's policy. Doc. 38-12, ¶¶ 5-6. This packet is titled Family and Medical Leave of Absence (FMLA) Employee's Own Serious Health Condition. Doc. 38-8. The forms that are included in the packet include the Request for Leave of Absence Form and the Certification of Health Care Provider - FMLA Form. Doc. 38-8. The cover letter included in this packet includes a statement that "[a]bsence due to a personal illness ... lasting five or more consecutive workdays requires [the employee] to complete the Request for Leave of Absence form, as well as [the employee's] doctor's completion of the Certification of Health Care Provider form." The cover letter also states that "failure to comply with any of [the specified] guidelines" will result in the employee's absence being "considered unauthorized and [the employee] may be subject to corrective action, up to and including termination." Doc. 38-12 at 4. The FMLA request paperwork which Defendant

7

sends to its employees who request FMLA also states that "[t]he certification must be provided within fifteen (15) days of [an employee's] request for leave, unless it is not practical to do so under the circumstances, under which case [the employee] must provide the certification as soon as it is practical." Doc. 38-8 at 13. Defendant's Certification of Health Care Provider form, states that "[i]ncomplete or illegible responses may result in delay of your leave or the denial of your request for leave."

Kathy Schlanker,[3] a Human Resources Generalist for Defendant, is responsible for internal human resources matters and policies and the processing of individual requests for leaves of absence, including those under the FMLA. Doc. 50, Def. Ex. C, Schlanker Aff., ¶ 2. In 2008, in connection with the hiring of Ms. Schlanker's supervisor, Ms. Luecal, Defendant reevaluated its current practices and determined that it would require compliance with its then-existing policies, including existing policies under the FMLA requiring that Ms. Schlanker "collect[] all required documentation such as completed Certification of Health Care Provider forms supporting any employee's request for FMLA leave in order to ensure that the leave was supported by medical documents." Def. Ex. C, ¶ 11.

On about April 1, 2008, Plaintiff developed health issues and was absent from work. She returned to work on April 7, 2008, but was unable to work commencing April 8, 2008. Plaintiff admits that she was fully aware that FMLA documentation needed to be completed and submitted in connection with her illness. Upon learning of Plaintiff's illness and absence from work, Defendant mailed Plaintiff the packet titled "Family and Medical Leave of Absence (FMLA) Employee's Own Serious Health Condition." Plaintiff received this paperwork, which included the above-described

---

[3] During the relevant period, Kathy Schlanker Conaster was known as Kathy Schlanker. As such, the court will refer to her as "Kathy Schlanker."

8

Request for Leave of Absence Form and the Certification of Health Care Provider form. The exact date that Plaintiff received the packet is disputed. Defendant states that Plaintiff received it on about April 12, 2008. Def. Facts, ¶ 16. Plaintiff contends that she asked that the packet be resent. Doc. 46, Pl. Resp. Def. Facts, ¶ 16.

In any case, on April 14, 2008, Plaintiff returned, via e-mail, her Request for Leave of Absence Form to Ms. Schlanker. She did not include her Certification of Health Care Provider. Ms. Schlanker responded, by e-mail, on Monday, April 14, 2008, stating that Plaintiff should mail the originals. Plaintiff testified that she called Ms. Schlanker, on April 14, 2008, to verify what it was that Ms. Schlanker wanted her to mail; that Ms. Schlanker said she needed the request form and "*she needed the doctor's information*"; and that Plaintiff said she did not have it and that "it would be going to them." Pl. Dep. at 108-10. Upon further questioning regarding her April 14, 2008 conversation with Ms. Schlanker, Plaintiff again testified that Ms. Schlanker said that "she needed the doctor information" and that Plaintiff "still owed her that." Pl. Dep. at 110.

The record includes a Certification of Health Care Provider form for Plaintiff which was completed by Dr. Smith, Plaintiff's primary care doctor. This form is dated April 15, 2008, and states that Plaintiff was hospitalized from April 1 to April 3, 2008; that Plaintiff would be bedridden through April 17, 2008; and that Plaintiff would be able to work only intermittently or less than a full schedule "through April 17, 2008 at least." Doc. 38-10 at 1-2. Plaintiff testified in her deposition that Dr. Smith certified Plaintiff's absence from work only until April 17, 2008; that Dr. Smith "couldn't verify what was going on with" Plaintiff's Crohn's disease "[s]o she told [Plaintiff[ [she] had to talk to Dr. Haithcock," a gastroenterologist; that Dr. Smith wanted the gastroenterologist to complete a more specific certification which would cover the entire length of Plaintiff's absence; that Plaintiff never

9

told Ms. Schlanker that she had a signed form from [Dr. Smith]" because Dr. Smith had told her that her "gastroenterologist [Dr. Haithcock] needed to provide the information"; that she never "offered [Defendant] the chance to look at [Dr. Smith's certification] to see if it was sufficient to approve [her] leave of absence"; that it was possible that she had given Dr. Smith's certification to her boyfriend to mail and that he did not mail it; and that she did not remember getting a certification from another doctor. Pl. Dep. at 134-137.

Plaintiff also testified that she and Ms. Schlanker had many phone conversations while she was on leave during April and May 2008; that during one of these conversations, the date of which Plaintiff could not remember, Ms. Schlanker and Plaintiff talked about a doctor's certification and Ms. Schlanker "asked [Plaintiff] where it was"; that Plaintiff responded that "it was still in [her] doctor's hands," that she had "mailed it to him and they were mailing it back to [her]"; and that Ms. Schlanker did not tell Plaintiff that she "needed it [and] just asked if [Plaintiff] had it filled out." Pl. Dep. at 103. On the other hand Plaintiff then testified that, when she told Ms. Schlanker that she had not received the certification back from her doctor, Ms. Schlanker "just said when [Plaintiff] got it back from the doctor, to make sure she got it." Pl. Dep. at 108. When specifically asked if during her numerous conversations with Ms. Schlanker whether Ms. Schlanker asked where Plaintiff's health certification was, Plaintiff responded: "She never led the conversations with that. She always asked how I was and what the doctor said, and she would give me gossip from the office; and then she would say, Just remember I need to get the paperwork for my files." Pl. Dep. at 116. When specifically asked if Ms. Schlanker told Plaintiff that she did not have to bring in the certification until she returned to work, Plaintiff responded: "No. She said, Just remember I need the paperwork to file." Pl. Dep. at 117. Additionally, Plaintiff testified that Ms. Schlanker called her on May 8, 2008, saying that she needed

10

Plaintiff's health care certification. Pl. Dep. at 119. Plaintiff further testified that she called Ms. Schlanker back on that date and told her that she "still didn't have it from the doctor and that [she] would try to get a hold of the doctor." Pl. Dep. at 119.

Ms. Schlanker states in a sworn affidavit that she repeatedly asked Plaintiff during April and May of 2008, for a competed Certification of Health Care Provider form; that she informed Plaintiff that the form was required; that Plaintiff indicated that she understood this requirement; that Plaintiff indicated on more than one occasion that she either had mailed the completed form or had given the completed form to her boyfriend to mail; that she never told, nor would she have told, Plaintiff that she did not need to provide the form until she returned to work; and that Ms. Luecal specifically directed Ms. Schlanker to obtain the certification form from Plaintiff. Doc. 50, Schlanker Aff., ¶¶13-14.

Ms. Schlanker called Plaintiff on May 13, 2008 and informed her that she was terminated. Schlanker Aff., ¶ 23. Plaintiff testified that it was during this conversation that she first "mentioned that [she] actually had the health certification form." Pl. Dep. at 124.

A letter, dated May 19, 2008, from Ms. Luecal to Plaintiff states, in relevant part, as follows:

As Kathy Schlanker discussed with you on May 13, 2008, Charter received your Request for Leave for Absence and your request for leave under the [FMLA] in particular, on April 14, 2008. As stated in the employee handbook and highlighted in your leave of absence paperwork, you were required to return a completed Certificate of Health form to Charter within 15 days after your receipt of that form. Charter could not make a determination regarding your eligibility for FMLA leave without the completed Certificate. Kathy Schlanker made multiple phone calls to you requesting this important documentation, and we allowed you 17 days beyond the standard 15-day period to provide the Certificate. Because you did not return a completed Certificate of Health, Charter was unable to approve your request for FMLA leave for the dates April 8, 2008 to the present.

11

> In addition, you have not provided to Charter any documentation regarding when you can return to work. Due to the pressing business needs of the organization, Charter cannot hold open your position indefinitely. As a result, Charter will separate your employment effective today, May 19, 2008.

Doc. 39-9 at 1.

## APPLICABLE LEGAL FRAMEWORK and DISCUSSION

The FMLA, 29 U.S.C. § 2612(a)(1)(D) provides that an employee is entitled to a total of twelve workweeks of leave during any twelve-month period when the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." See Krohn v. Forsting, 11 F. Supp.2d 1082, 1089 (E.D. Mo. 1998). 29 U.S.C. § 2613(a) provides, in relevant part: "An employer may require that a request for leave under subparagraph ... (D) of paragraph (1) ... of this title be supported by a certification issued by the health care provider of the eligible employee ... . The employee shall provide, in a timely manner, a copy of such certification to the employer." Additionally, 29 C.F.R. § 825.305 provides:

> (b) Timing. In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification.
>
> ...
>
> (d) Consequences. At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. If the employee fails to provide the employer with a complete and sufficient certification, despite the opportunity to cure the certification

as provided in paragraph (c) of this section, or fails to provide any certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313.

All that the FMLA requires of an employer is to inform an employee, in writing, that the employee "has 15 days in which to submit proof of a serious health condition, and of the consequences if it is not submitted within the deadline." Rager v. Dade Behring, Inc., 210 F.3d 776, 778 (7th Cir. 2000). "[T]he 15 day deadline for submitting medical documentation, or whatever longer deadline the employer fixes, can be tolled, ... by conduct [of] the employer that is deemed to equitably estop him to plead the expiration of the deadline as a defense to liability under the Act." Id. at 778. Thus, if an employer tells an employee "to forget" about the fifteen day deadline or the deadline which the employer has set, the employer cannot fire the employee for failing to provide medical documentation of a serious medical condition within such a deadline. See id. In fact, 29 C.F.R. § 825.305(b), as quoted above, has been held to provide for "equitable tolling" and "by implication equitable estoppel [] as well " under such circumstances. Id.

Although, prior to 2008, Defendant may not have required employees to comply with its policy under the FMLA that employees provide certification of a serious medical condition from a health care provider within fifteen days, it is undisputed that upon Ms. Luecal's becoming Defendant's Director of Human Resources, Defendant determined that this policy should be enforced. Thus, to the extent Plaintiff argues that, in the past she was not required to provide a medical certification until she returned to work, such an argument is not relevant to her leave in April and May 2008.

It is further undisputed that Plaintiff received Defendant's employee handbook and was informed, both by the handbook and by the packet mailed to her in April 2008, that she was required

13

to submit both of the forms provided to her in the packet, including the Certification of Health Care Provider form. It is also undisputed that Dr. Smith completed a medical certification on April 15, 2008, which said that Plaintiff would be unable to work "*at least*" through April 17, 2008. Nonetheless, Plaintiff never informed Ms. Schlanker that she had this certification during their numerous conversations; that when Ms. Schlanker told Plaintiff that she needed the certification, Plaintiff said she did not have it, despite her actually having one from Dr. Smith; and that Plaintiff never mentioned that she had a completed medical certification until Ms. Schlanker told her she was terminated. To the extent Plaintiff suggests that she did not do so because she was told by Dr. Smith to obtain a certification from Dr. Haithcock, the record does not reflect that Plaintiff ever obtained a certification from Dr. Haithcock. To the extent Plaintiff suggests that Ms. Schlanker told her that she did not have to provide the certification until she returned to work, Plaintiff's testimony in this regard is evasive and vague. On the other hand, Ms. Schlanker's sworn affidavit stating that she repeatedly told Plaintiff to provide a medical certification is precise and specific. See On Target Sporting Goods, 441 F. Supp. 2d at 1050 (holding that, upon responding to a motion for summary judgment, a party "may not rest on the allegations in [its] pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists").

Additionally, while the FMLA provides that an employer may require certification from a health care provider of a serious medical condition within fifteen days after an employee requests such leave and while Defendant's policy incorporates this provision, Defendant granted Plaintiff extra time to file a Certification of Health Care Provider form beyond the fifteen-day period. It is undisputed that Plaintiff did not provide Defendant with this form within the time provided. As such, the court finds that the undisputed facts establish that Defendant complied with the requirements of the FMLA,

14

including that Plaintiff be advised of the requirement that a health care certification be provided and of the consequences of failing to do so; that Defendant gave Plaintiff ample time to provide the form; and that, despite Defendant's repeatedly asking Plaintiff for the form, she did not provide it, even though she had a form completed by Dr. Smith. See 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305; Rager, 210 F.3d at 778  The court finds, therefore, in the alternative, that Defendant did not violate the FMLA and that summary judgment should be granted in Defendant's favor.

## CONCLUSION

For the reasons set forth fully above, the court finds that Plaintiff's Motion for Leave to File Second Amended Complaint should be denied; that Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be granted; that, alternatively, Defendant's Motion for Summary Judgment should be granted; and that Defendant's Motion for Leave to File Motion for Summary Judgment should be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Leave to File Second Amended Complaint filed by Plaintiff is **DENIED**; Doc. 51

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED**; Doc. 48

**IT IS FURTHER ORDERED** that, in the alternative, Defendant's Motion for Summary Judgment is **GRANTED**; Doc. 37

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Motion for Summary Judgment is **DENIED**, as moot;

**IT IS FINALLY ORDERED** that a Judgment incorporating this Memorandum Opinion shall

issue on this same date.

/s/Mary Ann L. Medler  
MARY ANN L. MEDLER  
UNITED STATES MAGISTRATE JUDGE

Dated this <u>16th</u> day of June, 2011.